**Anthony D. Woolf  USB #8654**
Attorney for the Plaintiff
50 East 100 South, Suite 101
St. George, UT 84770
Voice (435) 986-9339
Fax    (435) 986-0800

FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

JUN 2 5 2001

MARKUS B. ZIMMER, CLERK
BY _____
DEPUTY CLERK

## UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **Wei-Kaug Zhou,** | ) |
| Plaintiff, | ) COMPLAINT <br> ) FOR <br> ) CIVIL RIGHTS CLAIM <br> ) (42 U.S.C. §2000e) |
| vs. | ) |
| **Southern Utah University**; Steven D. Bennion, President; D. Ray Routzel, Provost; Charles L. Metten, Dean of Performing and Visual Arts, Bart Shanklin, Music Department Chair, And John/Jane Does 1-10. | ) <br> ) Civil No: <br> ) <br> ) Judge:  **2:01CV0474S** <br> ) |
| Defendant(s). | ) |

Plaintiff, Wei-Kaug Zhou, by and though his attorney of record, Anthony D. Woolf, 50 East 100 South, Suite 101, St. George, Utah, hereby submits this Complaint and allege as follows in support of his claim for relief:

### Nature of the Case

This is an action for damages arising under Title VII of the Civil Rights Act of 1964 and federal statute 42 U.S.C. 2000e-2. Its prohibition on discrimination based on national origin extends to all terms, conditions, or privileges of

employment whether or not provided by contract. The present action asserts that the Defendants violated Title VII after discriminating against the Plaintiff with respect to the compensation, terms, conditions or privileges of employment based on the Plaintiff's culture and national origin, as set forth in § 703(a). The Plaintiff seeks damages to compensate for the Defendant's unlawful action against the Plaintiff.

## The Parties

1. **Wei Kang Zhou**, a Chinese-born American citizen that taught music at Southern Utah University during the 2000-2001 academic year.
2. **Southern Utah University**, a state assisted institution of higher learning, founded in 1897 in Cedar City, Utah.
3. **Steven D. Bennion**, President of Southern Utah University.
4. **D. Ray Routzel**, Provost of Southern Utah University.
5. **Charles Metten**, Dean of Performing and Visual Arts at Southern Utah University.
6. **Bart Shanklin**, Music Chair at Southern Utah University.
7. Jane/John Does 1-10.

## Jurisdiction and Venue

This Court has proper jurisdiction under 42 U.S.C. 2000e-5(3) and

28 U.S.C §1331, stating that "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." In addition, venue is proper in this Court under 28 U.S.C. §1391(a).

## General Allegations

1. On June 13, 2000, Plaintiff was appointed as Assistant Professor of Music and Director of Orchestra at Southern Utah University. Plaintiff signed an Acceptance of Appointment which set forth the terms of the appointment which included $36,000.00 per academic year.

2. Upon arriving at Southern Utah University on or about August 7, 2001, the Plaintiff and his wife were introduced to Bart Shanklin, the Music Department Chair.

3. On August 11, 2001, Plaintiff received a memorandum from Bart Shanklin, Department Chair which outlined the teaching assignments and other duties. Mr. Shanklin's memo revoked the viola and violin (high strings) assignment promised Dr. Zhou earlier which denied the plaintiff the ability to earn any overload pay in addition to his regular salary.

4. On or about August 21, 2001, classes began at Southern Utah University for the academic year of 2000-2001.

5. From August 21, 2001 to approximately September 18, 2001, the working environment appeared calm and there were no apparent problems. The September 7, 2000 University newspaper praised Dr. Zhou's performance as orchestra leader.

6. On September 18, 2001, Chair Bart Shanklin sent a memo to Dr. Zhou explaining that there would be an "extensive evaluation" which would include peer evaluations, student evaluations, outside evaluations, studio evaluations and an intensive evaluations of his conducting and rehearsal techniques.

7. Department Chair Shanklin assigned an evaluator to attend every orchestral session that Dr. Zhou conducted at Southern Utah University—an unheard of custom among higher learning.

8. On October 3, 2000, Dr. Zhou sent Bart Shanklin a memorandum inquiring into the extreme and unusual evaluation process that the department had imposed on him. Dr. Zhou pointed out that he favored evaluations that were fair and administered equally among all new faculty members.

9. Southern Utah University has never taken such extreme steps in evaluating new faculty members.

10. On October 4, 2000, Bart Shanklin sent a memorandum to Dr. Zhou, stating that the department would continue to evaluate Dr. Zhou in any manner in which it deemed necessary.

11. On or about October 15, 2001, Dr. Zhou received a typed version of the music faculty's observation notes.  The comments were malicious and venomous at best, as well as absolutely erroneous.  The scathing comments were not grounded in specific details or facts, merely cursory allegations.

12. Chair Bart Shanklin told Dr. Zhou that he would provide Dr. Zhou with the detailed handwritten observation notes;   Dr. Zhou requested the detailed notes.  Bart Shanklin never provided Dr. Zhou with the detailed notes as he had promised.

13. On or about October 30, 2000, Dr. Zhou met with the Dean of Performing and Visual Arts, Charles Metten to express his concerns over the harsh, unusual and patently unfair evaluation process.

14. On November 1, 2000, Dean Metten sent a memo to Bart Shanklin requiring Bart Shanklin to cease the "formal adjudication" of the orchestra rehearsals, and if any faculty member wishes to attend Dr. Zhou's class they would need to request permission from Dr. Zhou.

15. On November 28, 2000, Dr. Zhou conducted the orchestra in a public performance. On November 29, 2000, Dean Metten sent a handwritten memo to Dr. Zhou stating that the performance was both "wonderful and inspiring."

16. On or about January 10, 2001, Dr. Zhou received a copy of the student evaluations from the previous semester—compiled on October 31, 2000. The student comments were overwhelmingly positive.

17. On February 14, 2001, Bart Shanklin and Charles Metten sent Dr. Zhou a letter informing him that his 2001-2002 academic year contract would not be renewed. The letter informed Dr. Zhou that May 5, 2000 would be his last day of employment with Southern Utah University.

18. On February 15, 2001, Dr. Zhou met with Provost D. Ray Routzel. The Provost told Dr. Zhou that he did not know the rationale behind the nonrenewal; however, he would contact the Dean of the Performing and Visual Arts and the Music Chair to inquire into the situation.

19. On February 20, 2001 the Provost sent Dr. Zhou an email explaining that he had spoken to the Dean and the Chair and that while he was not at liberty to share with Dr. Zhou the reasons, nor was required by law to share those reasons, he explained that there was a "rift" between Dr. Zhou and departmental faculty, staff and students.

20. On February 20, 2001, Dr. Zhou called the Provost's office and arranged a meeting. The Provost's administrative assistant set up an appointment for the following day.

21. On February 22, 2001, the Provost cancelled the meeting without explanation.

22. The Administration's position remained that the decision had been made and Dr. Zhou's termination deserved no further discussion.

23. The music faculty continued to create a hostile work environment for Dr. Zhou.

24. On March 12, 2001, Dr. Zhou filed a complaint with the EEOC. The EEOC sent Dr. Zhou a right to sue notice on March 28, 2001. An additional complaint is still pending with the EEOC.

### Cause(s) of Action

### Count I

1. Plaintiff alleges that the Defendant(s) violated his constitutional rights, privileges and immunities as guaranteed under the United States Constitution, as well as violating the Civil Rights Act of 1964 and 42 U.S.C.

§2000e-2 (Title VII), when Southern Utah University discharged the Plaintiff, as well as otherwise discriminating against the Plaintiff with respect to his compensation, terms, conditions, or privileges of employment because of the individual's race, color, religion, sex or national origin.

2. The Defendant(s) violated Title VII when they imposed an unusual evaluation process that persons outside the Plaintiff's protected group, otherwise similarly situated to the Plaintiff, were not forced to endure. The aforesaid draconian and humiliating evaluation process, as conditions of employment, clearly illustrates individual disparate treatment.

3. The Defendant(s) again violated Title VII when they refused to renew Dr. Zhou's appointment as Assistant Professor of Music on the basis of an evaluation process that was, in fact, intended to remove Dr. Zhou on the basis of his national origin.

## Damages

Due to the unlawful conduct of Southern Utah University, the Plaintiff has lost salary and benefits for the academic year 2001-2002, as well as future years. Even with the plaintiff's mitigation, the arduous search for a job similar to the job with Southern Utah University is costly and emotionally draining on the Plaintiff and his family. In addition, the Plaintiff's reputation

8

has been irreparably harmed from Southern Utah University's discriminatory conduct and subsequent actions and statements.

### Administrative Procedures

1. Plaintiff filed charge of discrimination with the Equal Employment Opportunity Commission or other appropriate administrative agency on March 12, 2001, regarding the alleged discriminatory conduct (Charge No. 350A11327).

2. Plaintiff received from the Equal Employment Opportunity Commission or other appropriate administrative agency a Notice of Right to Sue the Defendant(s) on March 28, 2001 (See Appendix A).

### Prayer for Relief

WHEREFORE, Plaintiff, by is undersigned counsel, request that the Court grant the following relief:

(a) enter a judgment in favor of the Plaintiff, granting the Plaintiff back pay from the date of the adverse employment decision to the date of the judgment, as well as front pay, including salary, overload and benefits to the extent equitable (three years).

(b) enter an injunction requiring Southern Utah University to discontinue the practice of disparate evaluation procedures for faculty.

(c) grant such further relief as this Court deems just and proper.

DATED this the 22nd day of June, 2001.

Respectfully submitted,

By *Anthony M. Woolf*
ANTHONY D. WOOLF
Attorney for the Plaintiff

50 East 100 South, Suite 101
St. George, UT 84770
Telephone: (435) 986-9339